Matter of Lavorato (2025 NY Slip Op 25291)

[*1]

Matter of Lavorato

2025 NY Slip Op 25291

Decided on December 19, 2025

Surrogate's Court, Monroe County

Ciaccio, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 19, 2025
Surrogate's Court, Monroe County

In the Matter of the Estate of Bonnie Lee Lavorato, Deceased

2024-2392/B

David C. Sieling, Esq. David Sieling Law PLLC, Attorney for the Petitioner//beneficiary Megan Lavorato 
Catherine Grantier Cooley, Esq. and Catherine B. Eberl, Esq., Hodgson Russ LLP, Attorneys for the Respondent/Executor

Christopher S. Ciaccio, S.

INTRODUCTION
A beneficiary of the Estate of Bonnie Lavorato has brought a proceeding pursuant to SCPA 2102(1)[FN1]
to inquire into the fiduciary's management of a business entity, the stock of which is solely owned by the Estate. 
The fiduciary now moves to dismiss the proceeding pursuant to CPLR 3211(a) on the ground that the beneficiary lacks standing. Secondarily, the fiduciary asserts that the dispute between a beneficiary of the Estate, and the fiduciary in her role as manager of the business entity solely owned by the Estate, is one between "living parties," so as to deprive the surrogate court of jurisdiction.
For the reasons below, the motion to dismiss is denied.
FACTSThe facts are not the subject of any disagreement.
The decedent Bonnie Lee Lavorato ("Decedent") died on August 28, 2024, leaving a Last [*2]Will and Testament, executed on February 8, 2024 (the "Will"). Five children survived her — Jordan Lavorato, Mariah Lavarato, Frank Lavarato III, Megan Lavarato, and Joshua Lavarato. The Will leaves the residue of the Estate equally to the five children.
The nominated executor, Mariah Lavorato ("Mariah"), represented by the firm Boylan Code, petitioned to have the Will admitted to probate and to be appointed fiduciary. The petition was granted on October 1, 2024 (beneficiary Megan Lavorato waived and consented) and letters testamentary were issued to Mariah.
At the time of her death, the Decedent owned all shares of stock in a corporation ("Corporation") called Private Label Foods of Rochester, Inc. Thus, the Estate, after her death, became the sole shareholder.
The Will, at Article SECOND, states that certain named employees, referred to as "Employee Buyers," were to be offered the opportunity to purchase the shares of the company "as soon as reasonably practicable," but that if they declined, the shares were to be sold "to any party the Executor chooses, at fair market value."
Article SECOND of the Will also states at that it was Decedent's "expressed wish" that none of her children or their spouses would own the shares of the corporation, but rather would benefit from the in the event the shares were to be sold, that the children would "benefit from the value of the shares at my death . . . "
On September 18, 2024, the Estate (the sole shareholder) elected to the Board of Directors Mariah Lavorato, Jordan Lavorato, Megan Lavorato, and Joshua Lavorato.
On October 4, 2024, the Estate removed Megan from the Board of Directors and elected Mariah Lavorato, Jordan Lavorato, and Joshua Lavorato.
In a series of emails in October 2024, each of the "Employee Buyers declined to purchase the shares, meaning that the Executor was then obligated to sell the shares at 'fair market value.'"
On February 7, 2025, counsel for Mariah (now Catherine Eberl of Hodgson Russ) wrote to counsel for Megan, David Sieling, of the firm Brenna Boyce PLLC, stating that "Both Megan and Frank (Lavorato III) have raised questions and concerns regarding the timeline for selling Private Label Foods" and giving a summary of actions taken to that date in pursuit of a sale of the company.
On May 27, 2025, counsel for Mariah provided to Megan's counsel, by e-mail, copies of the Corporation's Certificate of Incorporation, its By-Laws, together with two Written Consents of the Sole Stockholder of Private Label Foods of Rochester, Inc.
In the words of counsel for Megan, this alleged "paucity of communication" was the "basis" for the proceeding and exemplified " . . . the Executor's abdication of any responsibility to 'supply information concerning the assets or affairs of an estate relevant to' the Petitioner's interest after multiple requests in writing (SCPA 2102 [1])."
In her Verified Petition, Megan requests that the Court: "(a) compel the Executor to "provide all information and documents related to the Corporation:" (b) direct the Executor to clarify her authority to remove Megan from the Board of Directors of Private Label Foods, Inc. (the "Corporation"); (c) order the Executor to comply with the will's directive to sell the business "as soon as reasonably practical" and provide all beneficiaries with a plan for the sale of the business; and (d) schedule a conference or hearing to address these matters."
DISCUSSIONOn this motion to dismiss pursuant to CPLR 3211(a), in which the court "must accept the facts as alleged in the [petition] as true and accord the [petitioner] the benefit of every possible favorable inference" (Matter of Steinberg, 183 AD3d 1067, 1075 [3d Dept 2020]; see also Estate of Clifford, 83 Mis.3d 973, 975 [Surr. Ct. Monroe Cnty. 2024]), the Estate argues that Megan has no standing to bring a proceeding under SCPA 2102(1) because a) she is not a shareholder and b) this is a dispute between living persons — the corporation and Megan — and beyond the jurisdiction of the surrogate court.
Pursuant to SCPA 2102(1), a "person interested" (SCPA 2101[1][a]) may commence a proceeding to require the executor to "supply information concerning the assets or affairs of an estate relevant to the interest of the beneficiary when the fiduciary has failed after request made upon him in writing therefor." (SCPA 2102[1]). Surely Megan, a beneficiary of the Estate, is a "person interested" in the assets and affairs" of the Estate.
The fact that Megan is not a shareholder is irrelevant here, since the scope of the relief afforded by SCPA 2101(a) is not the equivalent of, say, a shareholder derivative action (see Lincoln First Bank, N.A. v Sanford, 173 AD2d 65, 66 [4th Dept 1991]). That section simply provides that a party interested in an estate — which Megan surely is, since she is a beneficiary - can, if a request for information is rebuffed or ignored or even only partially answered, move to have production of the information ordered.
The case cited above, Lincoln First Bank, N.A. v Sanford, 173 AD2d 65, 66 (4th Dept 1991), is not opposite. Petitioner bank, as executor and testamentary trustee, became the holder of decedent's stock interest in a corporation, Buf-Air Express, and brought a shareholder derivative action in surrogate's court seeking a return of cash reserves to Buf-Air Express and an award of damages arising out of alleged conversion and waste of corporate assets.
The Appellate Division, Fourth Department, in reversing the Monroe County surrogate, held that because the relief sought would benefit the corporation, and not directly (emphasis added) the estate, the matter was one between living persons — i.e., between the corporation and the defendant. Any damage award would then inure to the benefit of the corporation, not necessarily to the estate, at least in the absence of a "demonstration that decedent's stock is to be sold and the proceeds distributed as part of the administration of the estate or the testamentary trust" (Lincoln First Bank at 68; citing Dunham v. Dunham, 40 AD2d 912; Matter of Sirotta, 117 Misc 2d 1088, mod. 106 AD2d 507 [where the valuation or sale of stock was involved]).
Here, there is such a "demonstration" that the stock is to be sold, and the proceeds distributed to the children. The Will provides that the stock is to be sold to the named employees "as soon as practicable," but if they decline the children are to take distribution of the proceeds of the stock sale. When that sale is to take place, the Will does not say, but no reasonable inference as to the timing of the sale is possible other than that the sale from which the children will benefit is also to occur "as soon as is reasonably practicable." It cannot be inferred that the stock sale should be delayed indefinitely or will take place in the sole discretion of the fiduciary.
Since the decedent wanted the sale to the employees to occur "as soon as is reasonably practicable," the only possible inference is that she wants a distribution to her children in the same amount of time, regardless of who buys the stock.
Having said that, the phrase "reasonably practicable" also does not imply that the fiduciary needs to sell the stock at less than "fair market value" or at a "fire sale." It encompasses a general understanding that the fiduciary shall, in the exercise of her duties, which include maximizing the value of estate assets, achieve the best price for the sale of the stock. In [*3]fact, that is exactly what the Will provides.
It is clear, from a reading of the Will, that the decedent did not want her children owning the stock and thereby having an active role in the management of the company. Equally clear, though, is that she wanted them to benefit from the sale of the stock in the foreseeable future.
Thus, the dispute between the fiduciary and Megan is one involving the Estate, and this court has jurisdiction.
Because the greater weight of the law holds that the "statutory right to seek discovery is broad" (Matter of Steinberg, 183 AD3d 1067 [3d Dept 2020] citing SCPA 2102[1]; Matter of Quandt, 175 AD2d 433, 434 [1991]), the motion to dismiss the petition is denied.
"While it is true that neither SCPA 1412(4) nor 2102(1) expressly authorizes examination of material of a person or entity other than the decedent or the estate, the courts have permitted broad discovery of all material within the possession or control of a fiduciary as an aid to valuation of estate assets" (Matter of Estate of Quandt, 175 AD2d 433, 434 [3d Dept 1991]).
The fiduciary here as sole shareholder is "obviously capable of producing its records" (see, Matter of Estate of Quandt, 175 AD2d 433, 434 [3d Dept 1991] [Matter of Estate of Du Bray, 132 AD2d 914, 915 [3d Dept 1987]).
However, the court agrees with the fiduciary that the requests for information as stated in the "relief requested" section of the petition are overbroad and beyond the scope of SCPA 2101(1). The decedent's' intent was to keep her children out of the management of the corporate affairs, so while they are entitled to some documents and information, such as the corporate by-laws, the amendments to the corporate by-laws (which would answer the inquiry regarding the Mariah's authority to remove Megan from the Board) and any listing agreement to sell the company (which would answer the question regarding when the business is to be sold), an order directing a near blanket production of everything in the corporation's possession is not required.
As to the timing of the sale, the court cannot direct the fiduciary when to sell the corporation. The court in this instance and on these filings discerns no compelling reason to substitute its own judgment for that of the fiduciary. The fiduciary is bound to sell the stock at "fair market value," and reasonably soon. If she does not, she could be surcharged.
Thus, the motion to dismiss the proceeding is denied, and the fiduciary/respondent, is directed to turn over the corporate by-laws, any amendments to the by-laws, and an agreement listing the business for sale. All other requests are denied.
Dated: December 19, 2025Rochester, New YorkHon. Christopher S. Ciaccio

Footnotes

Footnote 1:A proceeding may be commenced "by a person interested in the assets or affairs of an estate" (SCPA 2101[1][a]) to require a fiduciary:

1. To supply information concerning the assets or affairs of an estate relevant to the interest of the petitioner when the fiduciary has failed after request made upon him in writing, therefore. SCPA 2102(1)